UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUTHER EARL LARKIN,<br><br>    Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI, acting Commissioner of Social Security,<br><br>    Defendant. | No. 1:20-cv-01402-GSA<br><br>**OPINION & ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDNAT COMMISSIONER OF SOCIAL SECURITY**<br><br>**(Doc. 20)** |

### I.   Introduction

Plaintiff Luther Earl Larkin ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is before the Court on the parties' briefs.[1]  Docs. 20–22. After reviewing the record the Court finds that substantial evidence and applicable law do not support the ALJ's decision.

### II.   Factual and Procedural Background[2]

On November 29, 2017 Plaintiff applied for disability insurance benefits alleging disability beginning June 16, 2013. The application was denied initially on March 21, 2018 and on reconsideration on June 5, 2018. Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on December 9, 2019. AR 36–61. On December 24, 2019 the ALJ issued a decision denying Plaintiff's application. AR 17–35. The Appeals Council denied review on August 10, 2020. AR 6–11.

### III.   The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge. *See* Docs. 8 and 10.
[2] The Court has reviewed the relevant portions of the administrative record including the medical, opinion and testimonial evidence about which the parties are well informed, which will not be exhaustively summarized. Relevant portions will be referenced in the course of the analysis below when relevant to the parties' arguments.

Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate non-disability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial

gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV. The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of June 16, 2013. AR 22. At step two the ALJ found that Plaintiff had the following severe impairments: ischemic heart disease, depression, neurocognitive disorder, obesity, and arthritis of the left acromioclavicular joint. AR 22. At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 23–24.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. 416.967(c) with occasional postural activities, occasional overhead lifting with the left hand, can perform work that can be learned in 3 months, can have occasional interaction with coworkers and the general public, and can tolerate occasional changes in the workplace. AR 24–29.

At step four the ALJ found that Plaintiff could not perform past relevant work as a forest firefighter. AR 29. At step five, in reliance on the VE's testimony, the ALJ found that Plaintiff could perform jobs existing in significant numbers in the national economy, namely: kitchen helper, hand packager, and order selector. AR 29–30. Accordingly, the ALJ found that Plaintiff was not disabled at any time since his alleged disability onset date of June 16, 2013. AR 30.

### V. Issues Presented

Plaintiff asserts one claim of error: that the ALJ erred at step three in failing to consider

whether Plaintiff's neurocognitive disorder impairment meets or equals Listing 12.02.

### A. **Applicable Law**

At step three, ALJs must consider whether a claimant's severe impairments meet or medically equal an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 416.920(a)-(f). "To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim. To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings at least equal in severity and duration to the characteristics of a relevant listed impairment . . ." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999)

An affirmative finding at step three results in a determination of disability without proceeding to steps four or five. See 20 C.F.R. § 416.920(d) ("If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience."); *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). ALJs must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listing. A boilerplate finding on this point is insufficient. *Lewis v. Apfel,* 236 F.3d 503, 512 (9th Cir. 2001).

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions, and provide that "[w]e will not defer or give any specific evidentiary weight,

including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization, and other factors. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the two most important factors and the agency will articulate how the factors of supportability and consistency are considered. *Id.*

**B.       Analysis**

Listing 12.02 requires the claimant meet paragraph A and B, or A and C. Paragraph A requires:

> A. Medical documentation of a significant cognitive decline from a prior level of functioning in one or more of the cognitive areas:
>    1. Complex attention;
>    2. Executive function;
>    3. Learning and memory;
>    4. Language;
>    5. Perceptual-motor; or
>    6. Social cognition.

The ALJ made the following related findings:

> The claimant has been observed to have memory loss and problems with attention (see eg 2F/6). The records indicate that this is likely a case of minimal to mild static encephalopathy secondary to the prolonged cardiac arrest which led to his some degree of anoxic brain injury and the encephalopathy manifesting itself with the above-mentioned clinical symptoms. However, he is able to perform activities of daily living without any restrictions and there is no noticeable progression of his symptoms (2F/7). The claimant had a normal electroencephalogram of the brain (2F/7). The records indicate that the claimant attended 5 therapy sessions in 2014 after which he did not return and he described a stabilization of his symptoms (5F/3).

Although the ALJ did not overtly reference Listing 12.02, and the ALJ's discussion as to the significance of Plaintiff's cognitive decline was a bit vague ("some degree" of anoxic brain injury and subsequent symptom manifestation), there appears to be no dispute that Plaintiff met Paragraph A in that he suffered a decline in the cognitive areas of memory and attention following

his heart attack and associated anoxic brain injury while working as a forest firefighter in 2013. Defendant makes no attempt to refute the same. *See* Resp. at 4, Doc. 21 ("even if Plaintiff satisfied the 12.02 'A' criteria . . . he failed to satisfy the 'B' criteria.").

Listing 12.02 paragraph B is satisfied if the claimant exhibits:

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
        1. Understand, remember, or apply information.
        2. Interact with others.
        3. Concentrate, persist, or maintain pace.
        4. Adapt or manage oneself.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.02(B).

Plaintiff contends "In evaluating the Listings at Step Three, the ALJ wholly failed to acknowledge or discuss these objective findings or the requirements of Listing 12.02." Br. at 8, Doc. 20. Although the ALJ did not cite listing 12.02 at step three, the ALJ did discuss listings 12.04 (depression and related disorders), as well as 12.11 (neurodevelopmental disorders) which have the identical paragraph B criteria as listing 12.02, namely two marked or one extreme limitation in any of the four broad areas of mental functioning.

Thus, the ALJ's discussion of those paragraph B criteria cured any error the ALJ made in failing to discuss listing 12.02. *See Jimenez v. Comm'r of Soc. Sec. Admin.*, 413 F. Supp. 3d 993, 999 (D. Ariz. 2019) ("The ALJ's failure to explicitly discuss whether Plaintiff's impairments meet or equal Listing 12.07 was error. The Court concludes, however, that such error was harmless because the requirements to meet Listing 12.07 are identical to the requirements of Listings 12.02, 12.04, and 12.06.").

As to whether substantial evidence supported the ALJ's finding that Plaintiff did not meet paragraph B criteria, Plaintiff offers little to no acknowledgment or analysis of the ALJ's pertinent discussion. The ALJ found, in relevant part, that Plaintiff had a moderate limitation in the area of

understanding, remembering and applying information, and a mild limitation in concentration, persistence and pace. AR 23. In so concluding, the ALJ acknowledged: 1) reports from Plaintiff and his wife that he suffered impaired memory and concentration following his heart attack; 2) similar reports from treating providers' progress notes; and 3) results from Dr. Portnoff's consultative examination noting psychomotor slowing and deficits in working memory, processing speed, and immediate/delayed verbal/visual memory. AR 23-24 (citing Ex. 5F, 2F/6, 7F, hearing testimony).

The ALJ nevertheless relied on the Mental Status Examination results (MSE) from Dr. Portnoff's consultative examination, including immediate recall of 3 out of 3 objects and delayed recall of 2 out of 3; recitation of 4 digits forward and 3 in reverse; unscramble a 5 digit string; perform basic arithmetic (subtract 75 cents from a dollar); and count backward from 20 without error. *Id.* (citing Ex. 7F, AR 604–610). The ALJ further relied on the opinions of the non-examining state agency consultants, Drs. Morris and Paxton, that Plaintiff had no more than moderate limitations in any area of mental functioning, and the opinion of the consultative examiner Dr. Portnoff to the same effect. AR 68-69, 84-85, 610.

Plaintiff emphasizes the opinion of Dr. Raclaw, another non-examining psychologist. In the check-box section of the Psychiatric Review Technique questionnaire, Dr. Raclaw checked only one box corresponding to a "marked" limitation (in concentration, persistence, and pace), and checked no boxes corresponding to an "extreme" limitation, whereas the paragraph B criteria for listing 12.02 require two marked limitations or one extreme limitation. In that sense, Dr. Raclaw did not opine that Plaintiff *meets* listing 12.02. Dr. Raclaw did, however, opine in narrative form at the conclusion of his opinion that Plaintiff *medically equaled* listing 12.02:

> The clamant attended a mental CE, 2/23/18 presenting as neat, cooperative, logical, alert and well oriented with good eye contact. On the W AlS IV, he produced a Verbal IQ of 58 an Performance IQ of 96 with a Full Scale IQ of 73. His test results

> on the WMS-4 were severely compromised. The diagnoses were Depression and Neurocognitive Disorder.
>  In summary, *the severe cognitive limitations* (the observed psychomotor retardation is secondary to the severely compromised V IQ), *relative to verbal IQ and memory equal the intent of listing 12.02 A & B-3*. He is incapable and the recommended onset is a projection of 6-months back from the critical CE or 8/1/17.

AR 675 (emphasis added).

In the RFC section, the ALJ explained her rejection of Dr. Raclaw's opinion as follows:

> A state agency psychological consultant, Dr. Raclaw, PhD, opined that the claimant equals listing 12.02 A and B-3 (12F). Dr. Raclaw also found that the claimant had a moderate limitation in the areas of restriction of activities of daily living and difficulties in maintaining social functioning and a marked limitation in difficulties in maintaining concentration, persistence, or pace (12F). The undersigned finds this opinion to be less persuasive. Even though the claimant and his wife have reported changes in cognitive function after his heart attack there is no evidence to support a finding that the claimant meets or equals any listings including 12.02 or has any marked limitations. The evidence is more consistent with a finding that the claimant has a mild limitation in the area of concentrate, persist, or maintain pace. During the consultative examination the claimant demonstrated adequate concentration, persistence, and pace. He repeated up to 4 digits forward, 3 reversed, and could unscramble/re-sort up to 5 digit string, was able to do basic mathematical calculations, and can count backwards from 20 without error.

AR 28. Plaintiff contends the ALJ's discussion did not adequately address Dr. Raclaw's opinion. Defendant contends the ALJ's discussion was overall sufficient and well supported insofar as the ALJ: 1) independently addressed the paragraph B criteria at step three (albeit in relation to listings 12.04 and 12.11, as discussed above); 2) noted Plaintiff's independence with activities of daily living; and 3) explained why she found the opinions of Drs. Morris, Paxton, and Portnoff more persuasive than the opinion of Dr. Raclaw.

The Court finds that the ALJ's discussion of Dr. Raclaw's opinion was nevertheless insufficient. The discussion broke no new ground compared to the ALJ's own step three findings as to the paragraph B criteria, relying on the same components of Dr. Portnoff's mental status examination including digit recitation forward and backward, simple arithmetic, and counting backward from 20. Further, the ALJ's statement that there is "no evidence to support a finding that

the claimant meets or equals any listings including 12.02 or has any marked limitations," is opposed by the WAIS-IV and WMS-IV cognitive testing results.

The ALJ did not recite or acknowledge those cognitive testing results emphasized by Dr. Raclaw.  Dr. Raclaw characterized Plaintiff's performance on the WMS-IV as "severely compromised," and in particular underscored Plaintiff's verbal and memory scores, finding they "equal the intent of listing 12.02 A & B-3." AR 675.  Indeed, Plaintiff's verbal composite score corresponded to the $0.3^{rd}$ percentile, and his WMS-IV index scores for auditory memory, visual memory, immediate memory, and delayed memory corresponded to the 1st or 2nd percentile.  AR 607, 609.

Granted, it was Dr. Portnoff who rendered the cognitive testing results in question, and nevertheless opined Plaintiff had only mild to moderate functional limitations.  In a sense it is odd that Dr. Raclaw reached a different conclusion than Dr. Portnoff about the functional implications of tests Dr. Portnoff himself rendered.  On the other hand, Dr. Portnoff's functional opinion is arguably not in keeping with Plaintiff's poor performance on cognitive testing, nor is it entirely in keeping with other statements Dr. Portnoff made, including that Plaintiff displayed cognitive deficits consistent with his history of "cardiac arrest and likely some degree of stagnant anoxic encephalopathy," and that "The prognosis for his NCD is poor at this stage." AR 610.

Given Plaintiff's neurocognitive disorder (NCD), the agency thought it prudent not only to order a consultative examination but to have Plaintiff undergo cognitive testing.  The routine Mental Status Examination (MSE), by contrast, is performed at every psychiatric consultative examination.  Despite scores in the bottom 1 percentile or worse in several areas of cognitive testing, if the ALJ could simply fall back on the routine MSE findings (e.g., orientation x 3, naming the president and state capital, subtracting 75 cents from a dollar, 3 object recall, counting backward from 20), then it's not clear what purpose the more detailed cognitive testing (WAIS-IV and WSM-

IV) would serve, or how much worse a claimant's performance would have to be on those tests in order to justify marked to extreme functional limitations as opposed to mild to moderate ones.

At a minimum, the ALJ needed to acknowledge and weigh the WAIS-IV and WSM-IV cognitive testing results against the other evidence and explain why she rejected Dr. Raclaw's opinion that based on those results Plaintiff medically equaled listing 12.02.

As to the remedy, even though the ALJ harmfully erred in giving Dr. Raclaw's opinion inadequate treatment, Plaintiff's request for a remand with instruction to calculate benefits is not reasonable under circumstances where the other 3 opinions in the record (of Drs. Morris, Paxton, and Portnoff) supported the ALJ's conclusion. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Generally when a court . . . reverses an administrative determination, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

**VI.   Order**

Therefore, for the reasons stated above the Court finds that substantial evidence and applicable law do not support the ALJ's conclusion. Accordingly, it is ordered that the Commissioner's decision is reversed, and this matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The Clerk of Court is directed to enter judgment in favor of Plaintiff Luther Earl Larkin and against Defendant Kilolo Kijakazi, acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **August 18, 2023**                    **/s/ Gary S. Austin**
                                               UNITED STATES MAGISTRATE JUDGE